United States District Court
Southern District of Texas
**ENTERED**
February 03, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# VICTORIA DIVISION

| | | |
|---|---|---|
| **CHEVY THORNTON,** | § | |
| | § | |
| Appellant, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 6:20-cv-00002** |
| | § | |
| **SEADRILL LIMITED,** | § | |
| | § | |
| Appellant. | § | |

## MEMORANDUM AND OPINION AFFIRMING
## ORDER OF BANKRUPTCY COURT AND FINAL JUDGMENT

Appellant Chevy Thornton ("Thornton") appeals from the December 19, 2019 Order of the Bankruptcy Court for the Southern District of Texas ("Bankruptcy Court"), in which the Bankruptcy Court denied Thornton's Motion for Leave to File Proof of Claim[1] and granted Appellee Seadrill Limited's ("Seadrill") Motion to Enforce the Confirmation Order ("December 19th Order").[2] On appeal, Thornton claims the Bankruptcy Court erred because the Notice of the Bar Date (the "Notice") Seadrill provided to him failed to satisfy the requirements of due process. Having considered the Parties' briefs, their oral arguments, the applicable law, and the record before this Court, the Bankruptcy Court's Order is **AFFIRMED.**

---

[1] "A proof of claim is a written statement setting forth a creditor's claim." FED. R. BANKR. P. 3001(a). "The proof of claim identifies the claimant, the amount owed by the debtor, and the status the creditor believes the claim should have in the case. Documents to support the claim are attached to the proof of claim form and filed with it." 14 COLLIER ON BANKRUPTCY § 5.11 (16th ed. 2020).

[2] "The confirmation order is a judgment *in rem*—a determination of the debtor's status as a chapter 11 debtor and is binding upon all parties in interest, whether or not they have appeared to contest entry of the order." 8 *id.* ¶ 1141.02. "The confirmation order binds the world to the extent the plan touches the debtor, its rights, assets or obligations as of the confirmation date, subject to constitutional due process limitations." *Id.*

**I.        FACTUAL AND PROCEDURAL BACKGROUND**

Thornton began working for Seadrill onboard the *Sevan Louisiana* in 2015.[3] (Dkt. No. 7 at 2039, 2104). At that time, Thornton provided Seadrill with his home address, listing it as 110 Hailey Road, Jena, Louisiana (the "Hailey Address"). (*Id.* at 2105–06, 2269). Thornton later relocated to 125 Warwick Road, Jena, Louisiana (the "Warwick Address").[4] When Thornton was hired, Seadrill maintained a procedure by which an employee could update his address in the company's personnel database. To do this, the employee was required to submit a form to the Rig Administrator, who would then forward it to human resources. (*Id.* at 2067). Beginning in 2016, employees could update information in the database on their own. (*Id.* at 2063, 2067). Despite moving to a new address, Thornton did not update his information in the personnel database by using either method provided by company policy. (*Id.* at 2062–63, 2067–68, 2106–07).

In March 2017, Thornton sustained an on-the-job injury. (*Id.* at 2268–69). The human resources advisor for the *Sevan Louisiana* provided Thornton with a Statement of Injury form to complete. (*Id.* at 2043–45). Thornton listed his new Warwick Address on the form and returned it to the human resources advisor. (*Id.* at 2043–45, 2268–69). Seadrill then transferred his injury claim for handling to York Risk Services Group, Inc. ("York"), a third-party administrator, who sent maintenance and cure payments to his Warwick Address. (*Id.* at 2220–67).

On September 12, 2017, Seadrill filed a voluntary petition for Chapter 11 relief. (*Id.* at 295–98). At this time, Seadrill and its affiliates had thousands of employees and between 10,001 and 25,000 creditors. (*Id.* at 297, 323, 326).

---

[3]   The *Sevan Louisiana* is an offshore drilling rig. (Dkt. No. 7 at 1848, 1865, 1874, 2039, 2066).
[4]   The Bankruptcy Court found Thornton moved to the Warwick Address "[a]t some unidentified point in time . . ." (*Id.* at 2159).

The Bankruptcy Court set a deadline of January 3, 2018 for filing claims "against [Seadrill] that arose or are deemed to have arisen on or before" Seadrill filed its petition for Chapter 11 relief (the "Bar Date"). (*Id.* at 768). This order also required Seadrill to "mail notice of the Bar Date . . . only to [its] known creditors, and such mailing shall be made to the *last known mailing address* for each such creditor, as reflected in [Seadrill's] books and records at such time." (*Id.* at 776 (emphasis added)).

Seadrill mailed the Notice to Thornton at the Hailey Address via First Class Mail. (*Id.* at 1887). Thornton, however, did not receive the Notice until sometime in late January 2018 or early February 2018, after the Bar Date had passed. (*Id.* at 2119). Shortly thereafter, Thornton forwarded the Notice to his lawyers, (*id.*), but he took no further action on the Notice for approximately nine months. (*Id.* at 1848–54, 1858–84). In the meantime, on April 17, 2018, the Bankruptcy Court entered a Confirmation Order on Seadrill's Second Amended Joint Plan of Reorganization ("Reorganization Plan"). (*Id.* at 1684–1759). The Reorganization Plan took effect on July 2, 2018. (*Id.* at 1834).

On November 7, 2018, Thornton filed a lawsuit under the Jones Act, 46 U.S.C. § 688, against Seadrill in the United States District Court for the Eastern District of Louisiana. (*Id.* at 1848–54). In response, Seadrill moved for the Bankruptcy Court to enforce its Confirmation Order on January 7, 2019. (*Id.* at 1838–47). Thornton then filed a Motion for Leave to File Proof of Claim on February 7, 2019. (*Id.* at 1858–84). In support of this Motion, Thornton argued that the Bankruptcy Court should permit him to file a claim against Seadrill even though the Bar Date had passed because (1) the Notice Seadrill provided him did not satisfy the requirements of due process, or, in the alternative, (2) his failure to change his address in accordance with company policy constituted "excusable neglect" under Bankruptcy Rule 9006(b). (*Id.* at 1909-15).

On December 19, 2019, the Bankruptcy Court granted Seadrill's Motion to Enforce the Confirmation Order and denied Thornton's Motion for Leave to File Proof of Claim. (*Id.* at 2159–64). *See In re Seadrill Ltd*, *et al,* No. 17-60079, 2019 WL 7580175, (Bankr. S.D. Tex. Dec. 19, 2019). The Bankruptcy Court also ordered Thornton to dismiss his Jones Act lawsuit with prejudice and to "comply with the [Bankruptcy] Court's [C]onfirmation [O]rder and the confirmed plan in all respects." (Dkt. No. 7 at 2164).

The Bankruptcy Court set forth a Memorandum Opinion in support of its December 19th Order. (*Id.* at 2159–63). In the Memorandum Opinion, the Bankruptcy Court concluded that the Notice satisfied due process because it constituted actual notice that provided Thornton with ample time to file a proof of claim. (*Id.* at 2161). Pertinent to the Bankruptcy Court's conclusion was that Thornton delayed filing his Motion for Leave to File Proof of Claim until approximately one year after receiving the Notice. (*Id.*). The Bankruptcy Court also concluded that Thornton's conduct did not constitute excusable neglect under Bankruptcy Rule 9006(b).[5] (*Id.* at 2161–63). This appeal ensued.

## II.  STANDARD OF REVIEW

A federal district court has jurisdiction to hear appeals from final judgments or orders of the bankruptcy courts. 28 U.S.C. § 158(a)(1); *see also Webb v. Reserve Live Insurance Co,* 954 F2d 1102, 1103-04 (5th Cir. 1992). "When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court. . . ." *First Nat'l Bank v. Crescent Elec. Supply Co.* (*In re Renaissance Hosp. Grand Prairie Inc.*), 713 F.3d 285, 293 (5th Cir. 2013) (internal quotation omitted). "A 'core proceeding' is one that invokes a substantive right provided by the Bankruptcy Code or is a proceeding that by its nature could arise only in the context of a

---

[5] On appeal, Thornton does not contest the Bankruptcy Court's conclusion that his conduct did not constitute excusable neglect. (Dkt. No. 12 at 13).

4

bankruptcy case." *Id.* (ellipses, alteration, and internal quotation omitted); *see also* 28 U.S.C. § 157(b)(2). "Generally, a bankruptcy court's findings of fact are reviewed for clear error and conclusions of law are reviewed de novo." *In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d at 294 (internal quotation omitted). "However, for a mixed question of law and fact, the factual premises are reviewed for clear error but the ultimate legal conclusion is reviewed de novo." *Id.* (quotation omitted). With respect to reviewing a bankruptcy court's findings of fact under the clear error standard, a district court "will reverse only if, on the entire evidence, [it is] left with the definite and firm conviction that a mistake has been made." *Templeton v. O'Cheskey* (*In re Am. Hous. Found.*), 785 F.3d 143, 152 (5th Cir. 2015).

## III.   DISCUSSION

The crux of this appeal is whether the Notice that Seadrill mailed Thornton to the Hailey Address satisfies the requirements of due process. The Bankruptcy Court concluded it did. (Dkt. No. 7 at 2161). On appeal, Thornton disputes this conclusion and asks this Court to find that he was denied due process and grant him leave to file his Jones Act claim. (Dkt. No 12 at 16–31).

Thornton sets forth three arguments in support of his assertion that the Bankruptcy Court incorrectly determined the Notice complied with the requirements of due process. First, he argues the Bankruptcy Court improperly burdened him with ensuring Seadrill mailed the Notice to the correct address. (*Id.* at 16–25). Second, he contends Seadrill knew or should have known his correct mailing address was the Warwick Address because York, Seadrill's "agent," possessed this information. (*Id.* at 25–28). Third, he argues the Notice he eventually received did not satisfy due process because he had not previously received any notice of Seadrill's bankruptcy proceedings prior to the Bar Date. (*Id.* at 28–31). The Court disagrees and will address these arguments in turn.

### A. BURDEN OF MAILING NOTICE TO THE CORRECT ADDRESS

Thornton first argues the Bankruptcy Court improperly placed the burden on him to provide Seadrill with the correct address to which the Notice should have been mailed. (Dkt. No. 12 at 16–25). The Court disagrees.

"A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice." *Greyhound Lines, Inc. v. Rogers*, (*In re Eagle Bus Mfg., Inc.*), 62 F.3d 730, 735 (5th Cir. 1995) (internal quotation omitted). "Determining whether a creditor received adequate notice depends on the facts and circumstances of each case." *Id.* Notice of a bar date is deemed "reasonable" only if it satisfies due process requirements. *See id.* at 736. "Due process requires notice that is reasonably calculated to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response." *Id.* at 735 (quotation omitted). "A claimant may . . . file a late proof of claim if he can show that failure to allow the filing would be violative of due process." *Id.*

"Mailing a notice by First Class U.S. Mail to the last known address of a creditor satisfies due process because it is *reasonably calculated* to inform the creditor of the bar date for filing proofs of claim." *Id.* at 736 (emphasis added) (quotation marks omitted). Importantly, "[t]he *creditor is responsible* for notifying the debtor, trustee, or the court of any changes in her mailing address to guarantee that she be given reasonable notice . . . ." *Id.* (emphasis added). Moreover, "[i]f the creditor fails to update her address and as a consequence does not receive a notice of the bar date that was properly mailed, *she cannot later argue* that her due process rights were violated." *Id.* (emphasis added).

6

A creditor's "denial of receipt [of notice of the bar date] is insufficient to rebut a presumption that proper notice was given, but it does raise a factual issue."[6] *Id.* at 735.  However, "[e]vidence that the notice was never mailed or that no other creditor received notice will rebut the presumption that proper notice was given." *Id.* "In effect, the presumption may only be overcome by evidence that the mailing was not, in fact, accomplished." *Id.* (internal quotation omitted). "To determine if a mailing was accomplished the courts may consider whether the notice was correctly addressed, whether proper postage was affixed, whether it was properly mailed, and whether a proper certificate of service was filed." *Id.* at 735–36.

*In re Eagle Bus Mfg., Inc.* involved circumstances similar to those in the present case. There, the debtor mailed notice of the bar date to the address the creditor had provided. *Id.* at 734–36.  The creditor failed to notify the debtor of a change in her mailing address. *Id.* at 736. Consequently, the debtor mailed notice of the bar date to the address it had on file, and the creditor did not receive it. *See id.* at 734–36.  The creditor then asserted that, because she did not receive notice of the bar date, her due process rights were violated. *See id.* at 736. The Fifth Circuit disagreed. *Id.* In support of its conclusion that the creditor's due process rights were not violated, the court "note[d] that [the creditor] herself is to blame for not receiving the notice because she failed to keep [the debtor] apprised of any changes in her mailing address." *Id.* Notably, the court stated that "[m]ailing a notice by First Class U.S. Mail to [the creditor's] last known address was reasonably calculated to inform her of the bar date for filing proofs of claim." *Id.*

Under Fifth Circuit precedent, Thornton was obligated to take the necessary steps to update his address in the personnel database if he wanted Seadrill to send company mailings, including

---

[6] Mailing the notice of a bar date by First Class U.S. Mail to the last known address of the creditor creates a presumption that the notice complied with due process. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d at 735–36.

7

the Notice, to the Warwick Address. *Id.* He took no such steps. Relying on the information contained in its personnel database, Seadrill mailed the Notice to the Hailey Address by First Class U.S. Mail, creating a presumption that Seadrill provided Thornton with proper notice. *Id.* at 735 ("[A] correctly mailed notice creates a presumption that proper notice was given."). Thornton's assertion that he did not receive the Notice before the Bar Date in and of itself is insufficient to rebut this presumption. *See id.* Moreover, he points to no other evidence in the record that would rebut this presumption. For these reasons, the Court concludes the Bankruptcy Court did not err.

## B. IMPUTING KNOWLEDGE OF THORNTON'S MAILING ADDRESS

Thornton next argues the Bankruptcy Court incorrectly concluded that the Notice satisfied the requirements of due process because, in arriving at this determination, the Bankruptcy Court failed to impute York's knowledge of his new mailing address—the Warwick Address—to Seadrill.[7] (Dkt. No. 12 at 25–28). In essence, Thornton claims that because York, as Seadrill's agent, knew to mail the maintenance and cure payments to the Warwick Address, Seadrill is deemed to have known that the Warwick Address was the correct mailing address as a matter of law. Thus, according to Thornton, the Notice sent to the Hailey Address was not reasonably calculated and therefore does not satisfy the requirements of due process as a matter of law. (*Id.*

---

[7] The Bankruptcy Court disposed of this argument without making findings as to the nature of the principal-agent relationship between Seadrill and York or which state's law applied in determining the scope of their relationship. (Dkt. No.7 at 2161). With respect to this issue, the Bankruptcy Court stated the following:

> While acknowledging that he failed to comply with the company's written policy regarding the update of his mailing address, Thornton argues that Seadrill should have known he had moved based on the address that Thornton provided for medical payments made by a third-party claims administrator. Such an argument ignores the practical. In providing notice to thousands of current and former employees as required by the Bar Date Order, Seadrill looked to the one place that should have reflected the most current last known address—its personnel database. Further, no evidence was provided to that Court that Seadrill had access to the claims administrator's records. Most import, the notice process implemented by Seadrill worked.

(*Id.*).

at 28). Assuming *arguendo* that York was Seadrill's agent and that Seadrill knew Thornton had requested for York to send the maintenance and cure payments to the Warwick Address, here too, the Court disagrees.

Thornton's argument misses the mark because notice of a bar date need only be *reasonably* calculated to comply with the requirements of due process. *See In re Eagle Bus Mfg., Inc.*, 62 F.3d. at 735. Notice of the bar date is reasonably calculated if it is sent "by First Class U.S. Mail to the *last known address of a creditor* . . . ." *Id.* at 736 (emphasis added). The Confirmation Order imposed a similar requirement on Seadrill, compelling Seadrill to "mail notice of the Bar Date . . . only to their known creditors, and such mailing shall be made to the *last known mailing address* for each such creditor, *as reflected in the Debtors' books and records at such time*." (Dkt. No. 7 at 776 (emphasis added)). This process is exactly what Seadrill followed when it mailed the Notice to Thornton. Seadrill looked to its personnel database. In that database, the Hailey Address was listed as Thornton's address because, up to that point, Thornton had not followed the company's procedures for updating his contact information in the database. So, Seadrill mailed the Notice to the Hailey Address in accordance with the Confirmation Order and Fifth Circuit precedent.

The fact that Seadrill's alleged agent sent certain correspondence to the Warwick Address does not mean it was *unreasonable* for Seadrill to look to its personnel database to determine the address to which a bar date notice should be sent. For a company with thousands of employees and between 10,000 to 25,000 creditors, (*id.* at 297, 323, 326), it was reasonable for Seadrill to look to its central repository of employee information to determine the last known address for each employee. Seadrill set forth a process by which an employee could update his contact information in its personnel database so that Seadrill could rely on this repository of information when it needed

9

to correspond with an employee. Thornton points to no company policy which would relieve him of his duty to update his address in the personnel database simply because he requested maintenance and cure payments to be sent to a different address. Nor does he point to any company practice or policy that would suggest it was unreasonable for Seadrill to expect him to do so. Rather, Seadrill made clear and accessible the process through which an employee could update his address in the personnel database. Submitting a Statement of Injury Form with a mailing address different than that in the personnel database was not part of that process. Moreover, under Fifth Circuit precedent, the creditor must update his address in order to bring a due process claim for a faulty bar date notice. *See In re Eagle Bus Mfg.*, 62 F.3d 735–36. Thornton did not update his address; he merely requested maintenance and cure payments be sent to a specific address. Thus, even if Seadrill knew Thornton's maintenance and cure payments were being sent to the Warwick address, Thornton's due process rights were not violated because Seadrill did not update his address in Seadrill's personnel database.

### C. THORNTON'S RECEIPT OF NOTICE AFTER THE BAR DATE

Thornton's final argument is that the Bankruptcy Court incorrectly concluded that due process requirements were satisfied even though Thornton did not have notice of Seadrill's bankruptcy proceedings until after the Bar Date had passed.[8] (Dkt. No. 12 at 28–31). In making this argument, Thornton asserts he was entitled to, but did not receive, *timely* notice of either the Bar Date or Seadrill's bankruptcy proceedings. (*Id.*). He rests this argument on three grounds.

---

[8] Thornton disputes the following statements in the Bankruptcy Court's Memorandum Opinion:

> Thornton received actual notice of the Bar Date, *albeit* after the Bar Date but *prior* to confirmation and the effective date of the plan. . . . The Court finds that Thornton more than received due process as he received actual notice that provided ample time for him to assert and protect his rights.

(*Id.* at 2161; Dkt. No. 12 at 30–31) (emphasis in the original).

(*Id.*). First, Thornton points to Bankruptcy Rule 2002(a)(7), which requires that a debtor provide a creditor with notice of "the time fixed for filing proofs of claims" at least twenty-one days before the bar date. FED. R. BANKR. P. 2002(a)(7). (Dkt. No. 12 at 28). In citing this rule, the Court infers Thornton is asserting that he was deprived of timely notice because he did not receive the Notice twenty-one days before the Bar Date. (*Id.*). Second, citing to *In re Ricks*, 253 B.R. 734, 744 (Bankr. M.D. La. 2000), Thornton contends that "timely notice" means notice that would allow him to file a proof of claim before the Bar Date. (*Id.* at 28–29). According to Thornton, because he received the Notice after the Bar Date passed, it follows that Notice was untimely. (*Id.*). Finally, Thornton contends Fifth Circuit and Bankruptcy Court caselaw provide that due process is not satisfied "when a creditor has absolutely no knowledge of the bankruptcy proceedings until after the bar date passes." (*Id.* at 29–30). Because Thornton received neither notice of the Bar Date nor Seadrill's bankruptcy proceedings until after the Bar Date, he allegedly "was denied reasonable notice under the circumstances." (*Id.* at 31). The Court is not persuaded with these contentions for two reasons.

First, Thornton ignores the fact that he did not receive the Notice until after the Bar Date because of his own failure. Thornton failed to notify Seadrill that his mailing address had changed by taking the steps necessary to update his contact information in the company's personnel database. As discussed, the Fifth Circuit has held that a creditor who does not receive notice of the bar date because he failed to apprise the debtor of his change in mailing address cannot later claim that the notice failed to satisfy due process requirements. *See In re Eagle Bus Mfg.*, 62 F.3d at 736. Moreover, he does not dispute that Seadrill timely mailed him the Notice; in fact, he conceded at oral argument before this Court that the Notice arrived at the Hailey Address prior to the Bar Date. (FTR 11:27:40–11:29:20). Thus, if he had promptly and properly notified Seadrill

11

that his mailing address changed to the Warwick Address, it is likely he would have received the Notice at that address prior to the Bar Date.[9]

Second, Thornton failed to notify the Bankruptcy Court of his intent to file a claim before that court entered its Confirmation Order—despite the fact that he had received the Notice shortly after the Bar Date had passed. Notably, there was a period of nearly three months between the time Thornton received the Notice and when the Confirmation Order was approved. (Dkt. No. 7 at 1684–1759, 2119). Yet Thornton waited over a year to notify the Bankruptcy Court. (*Id.* at 1858–84). What is more, Thornton brought the Notice to his counsel's attention shortly after receiving it. (*Id.* at 2119). Despite having done this, neither Thornton nor his counsel notified the Bankruptcy Court about not having any notice of Seadrill's bankruptcy proceedings prior to the Bar Date. Instead, Thornton filed his Jones Act lawsuit against Seadrill in federal court in Louisiana nine months after receiving the Notice. (*Id.* at 1848–54). If Thornton or his counsel had promptly alerted the Bankruptcy Court to the issue with the Notice and requested additional time to file a proof of claim, the Bankruptcy Court could have entertained such a request before

---

[9] The cases to which Thornton cites to support his assertion that he was entitled to at least some notice of Seadrill's bankruptcy proceeding before the Bar Date do not bolster his case. Indeed, none of these cases involve a creditor who, like Thornton, failed to notify the debtor that his address had changed and, consequently, did not receive any notice of the debtor's bankruptcy proceedings prior to the deadline for filing claims. *See Matter of Christopher,* 28 F.3d 512, 514, 515–19) (5th Cir. 1994) ("Because the claims of Sequa and Chromalloy American Corporation arose after commencement of Christopher's bankruptcy case, neither entity was listed or required to be listed as a creditor in Christopher's bankruptcy proceedings, and they never filed any papers or otherwise participated in those proceedings."); *Matter of Sam*, 894 F.2d 778, 778–79 (5th Cir. 1990) ("Grossie was not listed as a creditor at this time, and neither Grossie nor his attorney was sent a copy of the notice."); *In re Ricks,* 253 B.R. 734, 735–37 (Bankr. M.D. La. 2000) (Lott furniture was unaware of the debtor's bankruptcy proceedings until after the deadline for filing claims had passed because *the debtor* "neither listed Lott Furniture as a creditor, nor scheduled the debt allegedly owed to Lott Furniture."); *In re Texas Tamale Co., Inc.*, 219 B.R. 732, 734 (Bankr. S.D. Tex. 1998) ("Because Otto was not listed as a creditor, he did not receive formal notice of the bar date.").

entering its Confirmation Order.[10] Thornton, however, did not act until long after the Bankruptcy Court entered its Confirmation Order. (*Id.* at 1848–54, 1858–84).

By way of example, the Bankruptcy Court in the Southern District of Texas encountered circumstances similar to those of the present case in *In re Texas Tamale Co., Inc.*, 219 B.R. 732 (Bankr. S.D. Tex. 1998). In that case, even though the court noted the creditor at issue "may have acquired actual knowledge of the case prior to the claims bar date," *id.* at 734, it assumed, "[f]or purposes of [its] decision, [that] he did not learn of the case until after the bar date had passed." *Id.* at 740 n.8. The creditor did, however, receive notice of the debtor's bankruptcy before the bankruptcy court confirmed the debtor's plan of reorganization. *See id.* at 734–35. Despite this notice, the creditor never filed a claim, notified the creditor of his claim, notified the court of his claim, or requested that the court allow him to file a late claim. *Id.* at 734. Instead, he waited eleven months until after the bankruptcy court entered its confirmation order and, at that time, filed suit in Texas state court "alleging that [the debtor] owed him back wages, severance pay, and reimbursement for expenses." *Id.* at 735. After the case was removed to the bankruptcy court, the creditor asserted that the bankruptcy court should permit his late claim and not discharge it under the confirmation plan because he did not receive notice of the debtor's bankruptcy proceedings until after the bar date had passed. *See id.* at 734–35, 740. The court would have nothing of it, reasoning that the creditor "had several months prior to confirmation in order to assert his claim."

---

[10] Under certain circumstances, the Bankruptcy Court may provide additional time to file claims:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

FED. R. BANKR. P. 9006(b)(1).

*Id.* at 740.  Indeed, he "could have protected his rights with a motion to allow late filed claim." *Id.* The court noted the creditor at issue was sophisticated; *see id.* at 734–35, 740; and so "[t]he burden of at least attempting to secure allowance of a late filed claim would not seem too onerous or vexing . . . ." *Id.* at 740.

The court went on to note that "the problems associated with this case could have been averted if [the creditor at issue] had raised these problems at the confirmation hearing." *Id.* "Confirmation of a plan is not to be taken lightly," therefore, "[c]reditors should not be encouraged to sit on their hands during the bankruptcy process and then later pursue their claims in another forum after the debtor's plan has been confirmed." *Id.* "To this end, creditors with knowledge of the bankruptcy case should use *every* available means to assure that the plan provides for their claims." *Id.* at 740–41 (emphasis in original).  "Every available means includes filing claims and, in some circumstances, such as here, filing motions to allow late claims." *Id.* at 741.

Even assuming Thornton, unlike the creditor in *In re Texas Tamale, Inc.*, was not a sophisticated creditor, he did have the assistance of counsel, to whom he sent the Notice shortly after receiving it. (Dkt. No. 7 at 2119).  Neither Thornton nor his counsel brought his claim to the attention of the Bankruptcy Court until approximately one year after receiving the Notice and, instead, filed his Jones Act lawsuit against Seadrill in federal court nine months after receiving the Notice.  For these reasons, the Court is not persuaded Thornton was deprived of due process.

## IV.    CONCLUSION

Based on the foregoing reasons, the December 19th Order of the Bankruptcy Court is **AFFIRMED**.

This is a **FINAL JUDGMENT.**

SIGNED this February 2, 2021.

                                            **DREW B. TIPTON**
                                 **UNITED STATES DISTRICT JUDGE**